The report below improperly construed the term mountable. Rather than giving the term its plain and ordinary meaning, which is capable of being mounted, it instead gave it the meaning of having a feature for mounting. While having a feature for mounting may indeed be a definition of mountable, it is not the plain and ordinary meaning, obviously because of the fact that it incorporates the notion of a feature, which is not necessary. In the confidential blue brief, you say, the fact that each one of the relevant product's ports is located on the bottom of the product is critical. If they were solely meant for purposes other than mounting, then they would not have been located in centralized portions at the bottom of the frame where they could mate with dots to be used as digital picture frames, as provided in their advertising literature. Where else could the ports have been located? And wouldn't your argument apply even if the ports were located on the top or the side portion? Well, I think they would, given the fact that, depending on whether the image rotates on the tablet or not, depending on its orientation, it could be on any of the sides. It could have been on the back. Well, you're looking at me and I'm looking at you. I mean, I find the argument je jeune at best. Well, the argument with respect to the ports is simply that that related to the granting of the summary judgment. And our argument was that there was a port on the tablet and there was a corresponding connector on a dock, and to say that as a matter of law that the mating of the connector and the port did not constitute mounting was not justified as a matter of law. In your response in March of 2005, response to the 2004 office action, you say, Applicant respectfully asserts that none of the cited references teach a stand-alone and mountable picture frame comprising a digital still camera, as recited in claims 14 and 30. The examiner has rejected 14 and 30 over Jacqueline in light of Suso. Suso is directed to, quote, an information communication terminal device having a video camera, which needs to carry essentially a cellular camera phone. As such, you say, it would be completely unsuitable for mounting on a wall to display pictures. How is the current claim construction argument not attempting to recapture subject matter that was surrendered during prosecution? Well, we were saying, Suso was, as you read in the earlier portion, there was a statement made that it's not suitable for mounting, but it was differentiated based on a number of the features, namely that it was not suitable as a substitute for a conventional picture frame. Well, and as I have begun to say, by inserting this notion of a feature into the meaning of the term mountable, it is a prime example of what happens when you construe simple terms with more than is needed, because here the trial court, after inserting the term feature, which was not in the claim and not in the patent, when discussing mountable, then went on to interpret or construe the feature. So now we're construing something that was never there. And in that construction, the judge went further than simply to say feature for mounting and said now it is an intrinsic feature for mounting, but not a feature that merely makes the device capable of being mounted. So if we parse that, we have an intrinsic feature, but it can't by itself, not merely rendering it mountable. Those two statements can't be reconciled. An intrinsic feature for mounting necessarily makes the device mountable. So we have that. Then he went further in saying that in addition to those two requirements, he was not requiring that the device contain all of the components necessary to mount the device. So we have the necessity of an intrinsic feature for mounting, a negative limitation saying that not merely making it capable of mounting, and that all of the accoutrements to mount the device need not be part of the device. All of that to modify the term mountable, which is not a term of art and requires no scientific or specialized knowledge. Do you also argue that even under the district court's construction, you believe there were questions of fact with regard to the docking port? Yes. Even in his application of his construction, I think that both the form factor, that is, the size, shape, weight… No, but I don't want to talk about the size, shape, and weight at docking ports. Why don't you tell me why there is still a question of fact under his construction about docking ports, and is your argument a question of fact in terms of literal infringement, doctrine of equivalence, both? What exactly is that? Well, the court found that the ports could be used without mounting the device, therefore they were not an intrinsic feature for mounting the device. There were also arguments made that since the ports themselves were designed for other functions rather than mounting, therefore they weren't intrinsic features for mounting, which ignores the factual question of whether or not they could be used for more than one thing. I think this is probably your strongest argument here, or the strongest part of your case. And in my view, maybe the only… if you do have a strong part, this is it. And you're going to have to convince me, though, that getting a port that's a separate device and that's got the feature so that it fits in… getting the docking station, I'm sorry, that's a separate device that's got a feature that fits into the port, that that makes the tablet mountable. Well, I think the port and the connector and the way they go together is analogous to a nail in the wall. And, you know, when you hang a picture… See, and I think that's the difficulty I have with your argument, because everything would be capable of mounting. You could get an automobile and mount it on a wall. You could get a giraffe, you know, and mount the giraffe on a fence. They're capable of being mounted. Well, no one's going to say that a giraffe is mountable. I mean, unless maybe the giraffe has a little ring on him, you know, an intrinsic feature. Right, Your Honor. But even the athletes don't argue… I mean, that is essentially their argument, is that, you know, you must construe mountable to mean something other than capable of being mounted, because everything's mountable. But even their argument, there's… well, first, there's nothing in the record that establishes that with respect to picture frames. And second, there is… Doesn't this record actually present lots of evidence in iPad user manuals and elsewhere where it's very much the intention of the producers that that port on the bottom be used for mounting, because they expressly indicate so and teach people how to do it and use it as a digital picture frame? Yes, Your Honor. So, unlike the giraffe, where maybe he doesn't come with an instruction manual on how to mount him, this one actually comes with an instruction manual on how to mount it. And whether or not something is… there are things that are not mountable. I mean, that's ultimately a question of fact. I suspect that there is… you can design a picture frame of sufficient weight, size, construction, that it wouldn't be mountable. But, you know, that seems to me to go more to an issue of validity, which claim construction and validity are separate issues. And if that causes us a problem with validity down the line, then so be it. But we're entitled to the broad definition of… You know, Perth Warner, we get the broad definition of a broad claim. Do you want to save the rest of your time for rebuttal? Sure. Well, I just want to say I think your giraffe argument is spotty at best. Now, can you please tell me how you're dividing up your time? It's a little confusing for me. Yes, Your Honor. Lauren Fletcher on behalf of Apple, and I will be presenting argument for all five Appleese today. I reserve 13 minutes. If there are any issues that arise that are specific to Samsung, then Mr. Davis has reserved two minutes of Appleese time. The district court correctly construed the term mountable in accordance with its plain and ordinary meaning in the context of the claim language, the specification, and the statements made by the applicant during prosecution. First, going to the claim language, each claim here recites a standalone and mountable picture display and frame. Why don't we move you, since most of our questions were on this question of whether the docking port as a factual matter under the court's construction creates a question of fact. Sure. There is no factual dispute presented by a perfectus who had the obligation and the burden to present a factual dispute. Doctrine of equivalence was not raised here, so the only question is literal infringement. As for the communication ports, the evidence here demonstrates that they are not features for mounting. They are not features of the tablets for mounting. All in all, the question in the patent, one of the figures shows what looks like two holes, receptacles on the back of a picture frame. That's pretty standard. I've had picture frames that come with two holes on the back. They're just holes. They have no purpose other than you nail or you screw something into the wall, and then you lift them up and put them on that. You know what I'm talking about, right? The patent has a picture that looks similar to that and points to two holes on the back, and that's part of how that picture frame is mountable. Is that right? No, actually, Your Honor, the example in Figure 2 of the patent shows attachment apparatus 28, which shows clips or anchors. There are also interfaces or holes shown in there, interfaces 30, which are not described as features for mounting and are not used for mounting in the patent. Well, of course not. Those holes are on the bottom right. You couldn't possibly mount something and have it stay upright. I don't know what those holes are for, but they can't be for mounting. Those holes are for exactly the same thing as the ports, the communication ports in the accused tablet devices. They are places to plug in to make connections, either to charge power or to connect to other devices, such as televisions and computers. And that's exactly what the purpose is of the communication ports in the tablet. Why would that be a feature for mounting? They're not taught in the patent as being a feature for mounting, and they're not used for mounting. And, in fact, the evidence, the unsuited evidence in the record here, was that it's the separate docking stations themselves, not the ports, that are used for mounting. And that record evidence is at pages A448 to 450. So the docking station operates in conjunction with the port to mount. There is a male connector that enters the female connection port, right? That is what holds it in place. Well, actually, the evidence in the expert testimony shows that it's actually the docking station, the accessory itself, the separate accessory that's providing the support. The port is only there to provide the communication access, and to connect them so that power and other communications can transfer between. Well, there's a male and a female connection going on there, between at least the docking stations that I saw the pictures of, and the various tablet and or iPhone and other devices, right? There's a male-female connector. That's correct. So, while it's true that you could prop something up against the wall, or sit it on a stand, and it would be mountable, but isn't it also true that when you put, also include a male and a female connector there, doesn't that hold it in place in that mountable position more securely? The evidence was that it doesn't, that it's the docking accessory itself that provides the complete support. And if there was anything within the connector that was providing it, Is it so non-communicatical? I mean, it doesn't make any sense at all. The connectors are still somewhat flexible, and sitting in the docking station, it was shown that whether you use the ports or not, the docking station holds up the device in exactly the same way, and that the communication port isn't doing that. And in fact, Refectus' own expert testified that he had done no testing or measurements to see whether the port itself contributes to that at all. This is at page 8, 490 of the record. Let's go back to my example. I've seen lots and lots of picture frames. Even if you're saying that that figure in the patent isn't exactly the picture frame I'm talking about, let's talk about my picture frames. Picture frames with holes on the back. Two holes spaced out. The only purpose of these holes, undisputedly by everybody, would be to hang it on the wall. You put a nail, you put a screw, and then you lift the picture frame up, and you put it on those holes. Would that meet the mountable definition of these claims? Yes, those could meet the mountable definition, where those are the features in there, but the whole purpose is for them to be able to use to mount onto a wall. But now the question is, does that have to be the sole purpose? It doesn't have to be the sole purpose, but it has to be a feature for mounting, meaning that a purpose that the feature is for is to mount it. Here in the tablet devices, the ports themselves are not used for that purpose. It's the docking station itself that provides it. And the example that you gave of the holes in the back of the devices would be for mounting onto a wall. It's a little bit different here where we have something that's— Can you turn to page A1218 of your appendix, please? Page A1218, volume 6. What volume are you looking at? This is volume 6. I'll wait until everybody has it. Page A1218, volume 6. Okay. This is a definition, so it's the four little figures. I'm on page 82 at the top. It's my understanding that this is Dell Expert Witness. Am I right about that?  I don't believe it was a Dell Witness. I think he may have been the expert, but even if he's not, he's a Dell Witness. And doesn't he say that there's tension between the two connectors and that that's one thing holding them together and preventing them from falling back? It's a combination probably of many aspects. What's keeping—the question, I'm sorry, to be clear, is how you hold the device on the docking station and keep it from slipping off the dock. And he says it's the connectors that do it. Isn't that a factual testimony? I understand the factual testimony you pointed me to goes the other way, but this is summary judgment. And actually what he says is, and from falling back, it's the plastic part that holds it in place. That's part of the docking accessory. Yes, but he says— That's not the connector. Yes. And so he does acknowledge there is— The tension between the two connectors is what's holding it together. It's probably a combination of many aspects. I think I reversed the words a little bit, but I'm close. That's right. So he does acknowledge the tension between the connectors, but it's the bottom connector that's part of the docking accessory. Well, you say that, but that's not what he says. He doesn't say that. This is a question of fact. This is summary judgment. Your explanation is awesome, and you may prevail at trial, but why doesn't this create exactly the question of fact that the plaintiff says it does? Because this doesn't rise to the level of a factual dispute when considered in the record evidence as a whole. The connector is—even if there is some tension there, it's the— Even if there is some tension there, it's absurd to say that there isn't. You have an iPhone. I have an iPhone. It would be absurd to say when you sit it on the docking station there isn't some tension there, that that isn't functioning to hold it in place. That's correct, but there— It's just—it would defy common sense. There's no juror that would ever agree with you if you said it does nothing in terms of holding it in place. I'm not saying that there's no tension, but, again, these are tablet computers, not iPhones. They are larger devices than that, and the connector itself— These are iPads, right? I mean, tablets. That's what we're talking about, an iPad. Right. Probably even an iPad mini, right? No, no. These are just the larger, older versions of iPads and tablet devices. And there is a difference as you get to smaller devices and potentially to iPhones. But even with a smaller device, it's not just the connection from a wire to that port that would hold it up. I mean, I've got docking stations for my phone, and it's— There's something else that really holds it up. That's exactly right. Well, my interest—I just want to follow up on that, and that is, I assume— every one of us has used these things in some fashion, and I assume that the leverage factor, if you just use that old-fashioned male connector into the iPad, and you left it leaning against it, that the potential for touching it and snapping the thing would be the very reason that you want to have a docking station, rather than just those two items. That's exactly right, and that's why there was expert testimony on this, showing that just the connector itself isn't enough. And even the connector in the docking station, the weight is being held by the docking station in the lip there, even with some tension created by the— But the problem is, everyone agrees that nails in the wall— in fact, the district court's construction allowed for screws or nails—could be necessary. Right. You agreed with me a picture frame with two holes on the back is now the area to fall within these claims. That doesn't mean it has to contain the screws. The screws would be the only thing holding it on the wall. The screws would be the only thing preventing it from snapping and falling over. But we all agree it doesn't have to contain the screws or the nails in order to fall within these claims. Those can be external. Why isn't the docking—look, the wall, for example, is also external. That's right. Why isn't the docking station, like the screws and the nail, it's an external component, which working together as an intrinsic feature, holds the thing into place? The difference is that the docking station here is the thing that's doing the work. But the wall and the nails are the things doing the work in my example, right? All the picture frame has is a hole on the back, and you've already conceded that would qualify to these claims. And there still has to be a feature intrinsic to the device that's for mounting. And even with the ports that are in there, the ports aren't doing the mounting. It's still the docking station. The ports are making that connection. Even with some tension there, the record evidence that we've cited in our brief from the experts was that that still isn't enough because it is flexible, even with the connections. And to the extent that the connectors are providing that support, it comes from the bottom half of it, the base, which is part of the docking accessory. So there is still no intrinsic feature in the top of the wall. I don't understand how that... You haven't explained to me how that's different from a picture frame with two holes in the back and nails in the wall. Without the nails, without the wall, without the nails, without the screws, the thing doesn't stand up. But the holes work in conjunction with the nails in the wall in order to hold it up. And so those holes would make it mountable. That would be an intrinsic feature of the picture frame that would make it mountable. I don't understand why the hole in the bottom here would be used with... Without the holes in the picture frame example, it would not be mountable. Here, without the port, it's still mountable in exactly the same way because it still sits on the docking station in exactly the same way. So if you don't push it down and it doesn't actually link, it's sitting in that docking station and held in place. Exactly. And even in our briefing and in the record, we showed examples where the tablet was turned on its side, not using the communication port, still sat in the docking station in exactly the same way. It was supported by the docking station in exactly the same way because the docking station itself is the only feature for mounting. Communication port isn't contributing to that. Well, you say it's not contributing to that, but this Dell witness says it is. Well, the Dell witness says there's some tension there, but the expert testimony... And he says that's one thing that's holding it together. ...holding it together, not in place in standing upright. And the only testimony on this comes from the experts. And even Perfectus' own expert said he has no basis, this is at page 8, 490, for saying how much of the weight of the device is being supported by the dock as opposed to the connector. He didn't do the analysis, and that's exactly what he said at 490. So even with some tension... He doesn't know how much of it is, but he believes they're both doing it, and so it's a question of fact. I just don't see how this doesn't go to a jury. Perfectus' expert didn't put in that opinion, didn't put in that testimony. It doesn't rise to the level of creating a fact dispute because all of the evidence shows that what's actually holding the tablets upright is the separate dock accessory. There may be tension, there is tension between the connectors, but that's not what's holding it upright. If you take the docking port away, that's not going to be enough because it's so flexible, as the expert said. And if you turn the tablets on their sides and don't use the communication port, it's still holding, the docking station is still holding the device in the same way. Your time has expired. Do you have anything that you want to add? Okay. If I may, one thing, Your Honor. Well, can you give me up to two minutes? The communication port argument does not apply to the Hewlett Packard devices which don't have the communication ports. Thank you very much. Can we have a little bit of some rebuttal time? Mr. Bright. Very briefly, in all this discussion of the ports and whether they can be put on docks without using the ports, the requirement is for a feature for mounting. It doesn't require you to use the feature for mounting. It's mountable. In this case, it isn't the feature. What you're looking at is a feature for mounting. It's really still a port. And the reason you're going to plug it in, and the reason you plug it into that is to charge or to further use the device while it's up there on top of the dock. So it's a feature for continuing to use the device, and is it really a feature for docking? Well, but it is a feature for mounting, objectively, because it does mount. As Judge Moore noted in the testimony of the Dell people, there is some tension. It does hold it to the dock. Does it mount absent the dock? If you have just that male part, like in a wire, I mean, is it going to stand upright on its own? Well, no more than a conventional picture mounts if there's no nail in the wall. I mean, there's a hand-glove relationship between these two parts, and the appellees would have you look at one side and say, well, this is completely separate from the device and ignore the fact that the device is designed to interact with the dock. Isn't it true you can place the old-fashioned iPad into the docking station without actually mating the male and female connectors, and it'll sit there held up? Sure. And that's what I'm saying is that doesn't change the fact that it has to connect to the male and female connector. The fact that the user at that moment in time chooses not to use it doesn't change the fact. So the male and female connectors are unnecessary to mount the device into the docking station. Is that not correct? Well, in the scenario you presented, there are multiple ways of mounting. You're right. Those two things are not required because there are other, which you're using the form factor. I mean, basically what's going on here is if you don't use the connector, then you're simply using the form factor to mount it to the dock. Our contention is either one of those is a viable way, is a feature for mounting both the form factor and the port. And I would suggest that council's very fine distinctions with respect to  the form factor suggest strongly that there is a fact issue as to whether or not that's a feature for mounting or not, not simply something that can be dismissed out of hand. Council also argued basically for subjective intent in a feature, saying that that feature wasn't designed for mounting. There was a point in this case where the course of instruction was feature designed for mounting, and that subsequently was revised to simply feature for mounting to remove the subjective aspect of it. So it's not a question of whether the manufacturer intended it necessarily. It's whether or not it serves as a feature for mounting that meets an appropriate claim construction. And with that, if you have no further questions. Okay. Thanks both council for that argument. Katie, take it away. I have one more question before I close. And that is, if I put two nails in the wall, and prop the iPad onto them so that it's hanging on the wall, is the bottom lip of that iPad a feature for mounting? I think, well, yeah, we have argued that, and it's expressed in the patent, that the thinness, the size, the shape, the ability to do that is a feature for mounting. So the edge of this brief is a feature for mounting? I've got it mounted between my fingers? If not, yes. Okay. Thank you. Okay. Thanks all council. Katie's taken under submission. Next case for today, 2014-1816.